UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JESUS GARCIA,

                    Petitioner,

vs.                                    Case No.  2:07-cv-222-FtM-29SPC
                                       Case No.  2:04-cr-16-FtM-29DNF

UNITED STATES OF AMERICA,

                    Respondent.
_____


**OPINION AND ORDER**

_____This matter comes before the Court on petitioner Jesus
Garcia's Original Petition for Habeas Corpus, Request for Dismissal
of Indictment and Conviction and Request for Declaratory Judgment
(Cv. Doc. #1)[1] filed on April 9, 2007.  Petitioner filed a
Memorandum in Support (Cv. Doc. #3) of the Original Petition, and
a Supplement to Issue Three (Cv. Doc. #10).[2]  The United States
filed a Response in Opposition (Cv. Doc. #16) on July 28, 2008.

**I.**

        On March 17, 2004, a federal grand jury in Fort Myers, Florida
returned a three-count Superceding Indictment (Cr. Doc. #35)

_____

        [1]The Court will make references to the dockets in the instant
action and in the related criminal case throughout this opinion.
The Court will refer to the docket of the civil habeas case as "Cv.
Doc.", and will refer to the underlying criminal case as "Cr. Doc."

        [2]Other than the names of petitioner and his attorneys, these
documents are identical to those filed by co-defendant Ernesto
Garcia in Case No. 2:07-cv-221-FTM-29SPC.

charging six defendants, including petitioner Jesus Garcia (petitioner), with conspiracy to possess with intent to distribute and to distribute 5 or more kilograms of cocaine and 1,000 or more kilograms of marijuana (Count One). Petitioner was not charged in either of the two substantive offenses. On October 7, 2004, petitioner (as well as co-defendants Ernesto Garcia, Miguel Garcia, and Juan Reyes) pled guilty to Count One without benefit of a plea agreement. (Cr. Doc. #221.) The Court conducted a seven day sentencing hearing as to petitioner and these co-defendants from January 31, 2005 through February 10, 2005. (Cr. Docs. ## 266, 270, 275, 277, 278, 288, 344, 346-351.) Petitioner was sentenced to 262 months imprisonment, followed by 60 months supervised release. (Cr. Docs. ## 289, 294.)

A timely Notice of Appeal (Cr. Doc. #301) was filed. On March 10, 2006, the Eleventh Circuit Court of Appeals affirmed the sentences of petitioner and his two co-defendant brothers, Ernesto and Miguel Garcia. (Cr. Doc. #384.) United States v. Garcia, 174 Fed. Appx. 452 (11th Cir. 2006). The Eleventh Circuit rejected petitioner's claim that the district court violated his rights under United States v. Booker, 543 U.S. 220 (2005) and Blakely v. Washington, 542 U.S. 296 (2004), when the court enhanced his sentence based on facts neither admitted by petitioner nor proved to a jury beyond a reasonable doubt. The Eleventh Circuit also rejected petitioner's claim that the sentence was unreasonable

under <u>Booker</u>.  Petitioner did not file a petition for *certiorari* with the United States Supreme Court.

## II.

Petitioner asserts that the petition for habeas corpus is not brought pursuant to 28 U.S.C. § 2255, but pursuant to 28 U.S.C. § 451 (1940), the last valid habeas statute.  Petitioner asserts in Issue Seven and elsewhere in his Memorandum that Public Law 80-773, and therefore 28 U.S.C. § 2255 and 2241, was never enacted into positive law and therefore the petition cannot be brought pursuant to invalid statutes, which are a nullity.  Additionally, petitioner asserted that Public Law 80-773 violates the presentment clause of the United States Constitution, Article I, § 7.

The Court provided petitioner with a <u>Castro</u> notice pursuant to <u>Castro v. United States</u>, 540 U.S. 375 (2003), advising him of three options with regard to his original petition.  (Cv. Doc. #11.) Petitioner opted to have the petition considered under 28 U.S.C. § 2255 (Cv. Doc. #12), and the Court thereafter entered an Order (Cv. Doc. #13) construing it as such.

In light of petitioner's *pro se* status[3] and the requirement that the Court consider jurisdiction even if not raised, the Court will consider petitioner's claim that the current review must be

---

[3]*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

under habeas corpus and not pursuant to 28 U.S.C. § 2255.  Having reviewed the issue, the Court remains satisfied that review is pursuant to § 2255.

In <u>United States v. Martinez</u>, C-05-cv-423, 2006 WL 1293261 (S.D. Tex. May 6, 2006), the court wrote at some length on the validity of the laws at issue.  The Court agrees with <u>Martinez</u> that the challenged laws were properly enacted and this Court is undoubtedly vested with jurisdiction over both petitioner's criminal action and his current motion.  Every court that has considered such a jurisdictional challenge has rejected it in its entirety.  <u>See, e.g.</u>, <u>Mayfield v. United States</u>, 2:04-cv-402, 2007 WL 1875867 (E.D. Tex. June 27, 2007); <u>Derleth v. United States</u>, 5:05-cv-205, 2006 WL 1804618 (S.D. Tex. June 27, 2006); <u>United States v. Risquet</u>, 426 F. Supp 2d 310 (E.D. Pa. 2006); <u>United States v. Martinez</u>, 8:02-cr-19-T-27EAJ, 2008 WL 341350 (M.D. Fla. Feb. 5, 2008).

Additionally, the Eleventh Circuit has discussed the history of the federal writ of habeas corpus and its relation to a motion pursuant to § 2255.  <u>Medberry v. Crosby</u>, 351 F.3d 1049, 1054-58 (11th Cir. 2003); <u>Wofford v. Scott</u>, 177 F.3d 1236, 1239-42 (11th Cir. 1999).  It is clear from these discussions that a federal prisoner must utilize a motion under § 2255, and not a petition for habeas corpus, under most circumstances.

> In Section 2255, Congress provided a new statutory motion
> by which federal prisoners could seek post-conviction
> relief, separate and apart from an application for a writ

of habeas corpus. . . . Prior to the enactment of §
2255, federal prisoners petitioned for writs of habeas
corpus in the district where they were detained, which
frequently was different from the district where they had
been tried, convicted, and sentenced. This created
significant procedural problems for federal courts. [ ]
The new motion under § 2255 alleviated many of these
procedural difficulties by directing prisoners to file
the motion in the court where they were convicted and
before the judge who sentenced them, though without "any
purpose to impinge upon prisoners' rights of collateral
attack upon their convictions." [United States v.]
Hayman, 342 U.S. [205,] at 219, 72 S. Ct. [263,] at 272
[(1952)]. The § 2255 motion, however, was *not* a petition
for a writ of habeas corpus. . . .

Section 2255 also included exclusivity language that
renders the writ of habeas corpus (authorized by § 2241)
unavailable to most federal prisoners seeking to
challenge their convictions or sentences.

> An application for a writ of habeas corpus
> [under § 2241] in behalf of a prisoner who is
> authorized to apply for relief by motion
> pursuant to this section [i.e., § 2255], shall
> not be entertained if it appears that the
> applicant has failed to apply for relief, by
> motion [under § 2255], to the court which
> sentenced him, or that such court has denied
> him relief, unless it also appears that the
> remedy by motion [under § 2255] is inadequate
> or ineffective to test the legality of his
> detention.

28 U.S.C. § 2255 ¶ 5. Although the exact purpose of this
language is unclear, [ ] it is evident that this clause
integrated the new § 2255 remedy with the traditional
writ of habeas corpus. The purpose of the § 2255 motion
was to replace, in certain situations, the application
for a writ of habeas corpus--which in the case of federal
prisoners posed significant administrative problems--with
a similar but different remedy. If Congress had not
simultaneously limited the availability of the writ of
habeas corpus to federal prisoners when it authorized the
new § 2255 motion, § 2255 would have failed to solve the
problem posed by federal prisoners petitioning for writs
of habeas corpus in districts other than those in which
they had been convicted.

<u>Medberry</u>, 351 F.3d at 1056-57 (internal citations omitted). Since a § 2255 motion is adequate and effective to test the legality of petitioner's conviction and sentence, petitioner may not proceed under a petition for writ of habeas corpus. The Court will therefore continue to construe petitioner's motion as being brought under § 2255.

## III.

Petitioner raised six jurisdictional issues in his petition. Given petitioner's *pro se* status and the governing legal principle that jurisdictional issues cannot be waived or procedurally defaulted, <u>United States v. Peter</u>, 310 F.3d 709, 712 (11th Cir. 2002); <u>Harris v. United States</u>, 149 F.3d 1304, 1308 (11th Cir. 1998), the Court will examine these jurisdictional issues.

**(1) Jurisdiction Limited to Federal Property:**

In Issue Five of the petition, petitioner alleges that it was never established whether the alleged offense was committed within the boundaries of federally ceded property, and thus the court did not have "Legislative Jurisdiction over the Locus in Que." (Doc. #1, p. 4.) Petitioner argues that no jurisdiction exists in the United States to enforce federal laws until consent to accept jurisdiction over the acquired lands has been published and filed on behalf of the United States as provided in 40 U.S.C. § 255.[4]

---

[4]Title 40 U.S.C. § 255 is now codified at 40 U.S.C. § 3111 and relates to the purchase of land with public money.

The Superceding Indictment charged petitioner with a drug offense against the laws of the United States, that is, conspiracy to possess with intent to distribute and to distribute cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. There was no allegation that this offense occurred on federally owned property, and no evidence was presented which suggested that it did in fact occur on federally owned property. Neither was required.

The Commerce Clause of the United States Constitution gives Congress the authority to punish conduct under Title 21, United States Code. United States v. Lopez, 459 F.2d 949 (5th Cir. 1972), cert. denied sub nom. Llerena v. United States, 409 U.S. 878 (1972); United States v. Bernard, 47 F.3d 1101, 1102 (11th Cir. 1995); United States v. Jackson, 111 F.3d 101, 102 (11th Cir. 1997). This is not limited to conduct which occurs on federal property. United States v. Branch, 980 F.2d 1445, (5th Cir. 1992)(rejecting argument that Congress lacked authority to criminalize and to empower the federal courts to hear drug prosecutions not on federal property); United States v. Peterson, 194 Fed. Appx. 786, 788 (11th Cir. 2006); United States v. Banks-Giombetti, 245 F.3d 949, 953 (7th Cir. 2001). As was recently stated:

> Because Congress has the power to regulate interstate commerce through enactment of laws such as the Controlled Substances Act, it is not necessary for a particular drug offense to occur on federal property in order for courts to exercise appropriate jurisdiction over those offenses, when they violate the law's provisions. The District Court thus had jurisdiction over Movant and his offense

by virtue of 18 U.S.C. § 3231, which confers jurisdiction over 'all offenses against the laws of the United States.'

Locke v. United States, No. SA-04-CA-0489-RF, 2005 WL 356947 (W.D. Tex. Jan. 25, 2005). See also Peterson, 194 Fed. Appx. at 788 (Congress could criminalize local street-corner sale of cocaine base); United States v. Nixon, 201 F.3d 442 (6th Cir. 1999)(affirming district court finding that court lacked jurisdiction because drug offense was not committed on federal property was patently frivolous); Brown v. United States, 4:08-cv-87, 2008 WL 4905579 at *2 (S.D. Ga. Nov. 10, 2008)(district court has jurisdiction over defendants possession with intent to distribute cocaine which did not occur on federal property).

The Court finds that the criminal offense charged in this case need not have been committed on federal property in order for Congress to have had the authority to criminalize the conduct. Therefore, the claim in Issue Five of the petition is without merit.

**(2) Public Law 80-772 and 18 U.S.C. § 3231:**

In Issue Six of the petition, petitioner asserts that Public Law 80-772, and therefore 18 U.S.C. § 3231, was never enacted into positive law and therefore is a nullity, and violates the presentment clause of the United States Constitution and the separation of powers doctrine, and thus cannot support his conviction or the Court's ability to sentence. Petitioner argues

as follows:   Public Law 80-772 was passed by the House of Representatives in the first session of the 80th Congress, but the Senate did not pass the bill; that the bill then mysteriously showed up in the Senate, which amended the bill and passed the amended bill; the House voted on the amendments, but not the amended bill, and therefore the bill was not constitutionally passed into law and is a nullity; that Congress adjourned on June 20, 1948, and the bill was signed by President Truman after the adjournment; since the enrolled bill passed by the Senate was altered from the engrossed bill passed by the House, the bill is a fraud and forgery in violation of 1 U.S.C. § 106 and is therefore invalid; since the bill did not pass both Houses of Congress and was not signed into law in Congress assembled as required by 1 U.S.C. § 101, there was no valid enactment; the bill was not published in the Federal Register, rendering it null and void from its inception; and because President Truman committed crimes in other areas of his administration, it is presumed that everything he did was dishonest.  (Cv. Doc. #3, pp. 13-14, 27; Cv. Doc. #3-2, pp. 14-17.)  Further, petitioner argues that the government is estopped from arguing otherwise based upon remarks made by an Attorney General at George Mason University in 2005.  (Civ. Doc. #3, p. 18.)

Petitioner's arguments as to the validity of § 3231 are without merit.  As the Third Circuit Court of Appeals recently stated:

> Abdullah argues that his guilty plea is void because the criminal jurisdiction statute, 18 U.S.C. § 3231, was never enacted into positive law and is unconstitutional. This argument is without merit. Section 3231 of title 18 provides: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Therefore, where an indictment charges a defendant with violating the laws of the United States, § 3231 provides the district court with subject matter jurisdiction and empowers it to enter judgment on the indictment. The 1948 amendment to that statute, Public Law 80-772, passed both houses of Congress and was signed into law by President Truman on June 25, 1948. See United States v. Risquet, 426 F. Supp 2d 310, 311 (E.D. Pa. 2006). The statute relied upon for jurisdiction in this case was properly enacted and is binding. Even if the 1948 amendment to § 3231 were somehow defective, the District Court would retain jurisdiction over this case because the predecessor to § 3231, which Petitioner does not challenge, provides for such jurisdiction as well. Id. at 311.

United States v. Abdullah, 289 Fed. Appx. 541, 543 n.1 (3d Cir. 2008). No court has held to the contrary. E.g., United States v. Hawkins, 2009 WL 585477 at *2 (M.D. Pa. 2009)(collecting cases). The statements petitioner attributes to the Attorney General in 2005 neither support petitioner's legal positions nor estop the government from arguing against the positions.

It is certainly true that federal courts are courts of limited jurisdiction, and there is a presumption that every federal court is without jurisdiction unless the contrary affirmatively appears from the record. United States v. Rojas, 429 F.3d 1317, 1320 (11th Cir. 2005). However, the Constitution of the United States gives Congress the power to create inferior federal courts and determine their jurisdiction, U.S. CONST. art. III, § 1, and Congress has done

so.  Congress has conferred original jurisdiction of "all offenses against the laws of the United States" to the federal district courts.  18 U.S.C. § 3231.  "Federal courts have exclusive jurisdiction over all offenses against the laws of the United States. 18 U.S.C. § 3231." United States v. Jackson, 315 Fed. Appx. 127, 128 (11th Cir. 2008). See also United States v. Tinoco, 304 F.3d 1088, 1105 n.18 (11th Cir. 2002); United States v. Quinto, 264 Fed. Appx. 800, 801-02 (11th Cir. 2008); United States v. Mack, 198 Fed. Appx. 799, 802 (11th Cir.), cert. denied, 549 U.S. 1088 (2006)(district court had jurisdiction under 18 U.S.C. § 3231 based on indictment charging offenses including 21 U.S.C. §§ 841 and 846).

Accordingly, the Court finds that § 3231 was validly enacted and provides the district courts with subject matter jurisdiction over federal criminal drug prosecutions under 21 U.S.C. §§ 841 and 846.  Therefore, the Court finds that Issue Six of the petition is without merit.

**(3) Penalty Provision of 21 U.S.C. § 841:**

In Issue Eight of the petition, petitioner asserts that 21 U.S.C. §§ 841 and 846 are invalid criminal statutes because the penalty provision (21 U.S.C. § 841(b)), as enacted by the Comprehensive Crime Control Act of 1984, was repealed by the Anti-Drug Abuse Act of 1986 and not re-enacted into law again. Petitioner is incorrect.

The relevant statutory history of the federal drug enforcement penalty scheme and of federal sentencing in general was set forth in Gozlon-Peretz v. United States, 498 U.S. 395, 399-403 (1991) and Chapman v. United States, 500 U.S. 453, 460 (1991). The Comprehensive Drug Abuse Prevention and Control Act of 1970 divided drugs by schedules according to potential for abuse. Chapman, 500 U.S. at 460. That law did not link penalties to the quantity of the drug possessed; penalties instead depended upon whether the drug was classified as a narcotic or not. Id. The Controlled Substances Penalties Amendments Act of 1984, which was a chapter of the Comprehensive Crime Control Act of 1984, first made punishment dependent upon the quantity of the controlled substance involved. Id. Penalties were based instead upon the weight of the pure drug involved. Id. In the Anti-Drug Abuse Act of 1986, Congress adopted a "market-oriented" approach to punishing drug trafficking, utilizing the total quantity of the drug, rather than the amount of pure drug involved, to determine the length of the sentence. It intended the penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they were found. Id. The Anti-Drug Abuse Act of 1988 amended the conspiracy provision of § 846 to ensure that the penalties for conspiracy would be identical to the penalties for parallel substantive offenses under § 841(a). United States v. Macias-Valencia, 510 F.3d 1012, 1014-15 (9th Cir. 2007).

Neither the Supreme Court nor any other court has held that these changes in statutory penalties repealed the penalty provision and left drug offenses without a penalty.  To the contrary, the Supreme Court has recognized the continued applicability of the penalty provision of the statute.  E.g., Kimbrough v. United States, 552 U.S. 85 (2007).  Petitioner's argument that there is no penalty provision to §§ 841 or 846 is incorrect, and Issue Eight of the petition is without merit.

**(4) Government Fraud and Misconduct:**

In Issue Nine of the petition, petitioner asserts that the court is without jurisdiction because the government committed fraud on the court, conspiracy, bad faith, and violated the principle of fair dealing.  Specifically, petitioner argues that there was such misconduct because the Department of Justice knew that Public Laws 80-772 and 80-773 were never enacted into positive law and were unconstitutional on their face and void *ab initio*, and yet proceeded with the prosecution anyway.

The Court has found that these Public Laws are not unlawful for any of the reasons petitioner sets forth.  Therefore, there was no misconduct by the government as to any jurisdictional issue.  Accordingly, Issue Nine of the petition is without merit.

**(5) Subject Matter Jurisdiction:**

In Issue Ten of the petition, petitioner asserts that the district court never had authority to prosecute petitioner because

it has no territorial jurisdiction or Article III Authority, and because it was transferred into the Justice Department as part of the emergency powers and in violation of the Separation of Powers Doctrine. Petitioner asserts that a district court is an Article I administrative court, and was never authorized by Congress or the Supreme Court to use the Federal Rules of Criminal Procedure or conduct criminal proceedings.

As noted earlier, the Constitution of the United States gives Congress the power to create inferior federal courts and determine their jurisdiction. U.S. CONST. art. III, § 1. Congress has conferred original jurisdiction of "all offenses against the laws of the United States" to the federal district courts. 18 U.S.C. § 3231. A federal district court is therefore not an Article I court, but derives its jurisdictional authority from Article III of the United States Constitution. United States v. Belt, 206 Fed. Appx. 289, 289-90 (4th Cir. 2006)("[T]here can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts" (citing Hugi v. United States, 164 F.3d 378, 380 (7th Cir. 1999))). Additionally, Congress has created district courts in each state, including the State of Florida. It has further divided the state into three judicial districts and provided that Lee County, Florida will be in the Middle District of Florida and that court shall be held *inter alia* in Fort Myers. 28 U.S.C. § 89. Therefore, Issue Ten of the petition is without merit.

**(6) No Declaration of War:**

In Issue Twelve of the petition, petitioner asserts that the district court had no jurisdiction because the "War on Drugs" violated the requirement of Article I, § 8 of the United States Constitution, that any decision to go to war must come from Congress.  Petitioner argues that the President declared a "war on drugs" on June 17, 1971, making the severe penalties enacted into Title 21 the "laws of war."  Petitioner's claim is without merit.

The United States Supreme Court has recognized that shortly after taking office in 1969, President Richard M. Nixon declared a national "war on drugs" which resulted in new statutes by Congress to strengthen law enforcement tools and penalties.  Gonzales v. Raich, 545 U.S. 1, 10-15 (2005).  It is certainly true that the United States Constitution makes the President the "Commander in Chief" of the Armed Forces, U.S. CONST. art. II, § 2, cl. 1, but vests in Congress the powers to "declare War ... and make Rules concerning Captures on Land and Water," U.S. CONST. art. I, § 8, cl. 11.  Hamdan v. Rumsfeld, 548 U.S. 557, 591 (2006).  The "war on drugs" metaphor, however, is not a literal war within the meaning of the Constitution.  Even if it were, the penalty provisions of the federal drug statutes _have_ been enacted by Congress, thus satisfying the constitutional requirements.  Therefore, Issue Twelve of the petition is without merit.

**(7) Court's Failure to Raise Jurisdictional Issues:**

Petitioner also asserts in an unnumbered issue in the petition that the Court erred when it failed to raise these jurisdictional issues on its own. For the reasons stated above, there are no meritorious jurisdictional issues which should have been raised. Therefore, this issue is also without merit.

**III.**

Petitioner raises three claims of ineffective assistance of counsel at the trial court level and/or on appeal. The standards of review are well settled, and application of these standards to petitioner's case demonstrates no basis to grant his § 2255 motion.

**A.**

A person who has pled guilty may challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty. <u>United States v. Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir. 1986). The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000)(quoting <u>Strickland</u>, 466 U.S. at 690).  This judicial scrutiny is "highly deferential."  <u>Id.</u>  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 689-90.  An attorney is not ineffective for failing to raise or preserve a meritless issue.  <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992).

The same deficient performance and prejudice standards apply to appellate counsel.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86 (2000); <u>Roe v. Flores-Ortega</u>, 528 U.S. at 476-77.  If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal.  If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice.  <u>Joiner v. United States</u>, 103 F.3d 961, 963 (11th Cir. 1997).  Nonmeritorious claims which are not raised on direct appeal do not constitute ineffective assistance of counsel.  <u>Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136, 1144-45 (11th Cir. 2005).

Read liberally, the petition also suggests that petitioner's guilty pleas was involuntary.  The standard of review as to a

voluntary guilty plea is also well-established. "A guilty plea is more than a confession which admits that the accused did various acts. [ ] It is an admission that he committed the crime charged against him. [ ] By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." United States v. Broce, 488 U.S. 563, 570 (1989)(internal quotations and citations omitted). For this reason, the United States Constitution requires that a guilty plea must be voluntary and defendant must make the related waivers knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). Rule 11 explicitly directs the district judge not to accept a plea without determining these core concerns. Therefore, on review the Court is "warranted in regarding the court's acceptance of the plea as a positive finding on each [component of the Rule]." United States v. Buckles, 843 F.2d 469, 473 (11th Cir. 1988).

**B.**

**(1) Mis-Advice of Maximum Sentence/Involuntary Plea:**

Petitioner asserts that his attorney was ineffective by mis-advising Petitioner of the maximum sentence he faced, and that this resulted in an involuntary guilty plea.  Petitioner states that his attorney assured him that if he were to "open plea" he would receive a sentence at the Sentencing Guidelines level of 30 (after a two level reduction for acceptance of responsibility) without any enhancements, i.e., a sentence of between 97 to 121 months.  (Cv. Doc. #3, pp. 2, 12, 35-36.)  Petitioner further asserts that if his attorney had informed him of his actual exposure, he would have proceeded to trial or requested a plea agreement.  (Id. at pp. 35-36.)  Additionally, petitioner argues that either his attorney or the Court should have given petitioner an opportunity to withdraw his guilty plea.  Petitioner asserts that "[n]owhere in the record did the Court ask the Petitioner if he had been promised anything or if he want to proceed." (Cv. Doc. #3, p. 36.)

The Court assumes for purposes of this motion that petitioner's attorney made the sentencing predictions attributed to them by petitioner.  The record affirmatively demonstrates, however, that the guilty plea is valid and that there was no ineffective assistance of counsel with regard to the sentencing advice.

The guilty plea proceeding was conducted by a magistrate judge, who took the guilty pleas of petitioner and his two co-defendant brothers at the same time. (Cr. Doc. #290.) At the change of plea hearing petitioner was represented by a retained attorney. (<u>Id.</u> at 3). Petitioner was advised that he would be questioned under oath and asked questions about the offense in order for the Court to determine if pleas of guilty should be entered. (<u>Id.</u> at 12.) Petitioner was told that any answers he gave which were not completely truthful could later be used against him in a prosecution for perjury or false statement (<u>Id.</u>) Petitioner was also advised that he could confer privately with his attorney at any time during the proceeding. (Cr. Doc. #290, p. 13.) Petitioner was then placed under oath. (<u>Id.</u>)

Petitioner answered some biographic questions, and stated he was not suffering from anything that would interfere with his ability to think or concentrate, <u>id.</u> at 16. Petitioner stated he had never been under the care of a psychologist or psychiatrist, had been addicted to cocaine and alcohol twenty years before, and had last used either the day before his arrest approximately six months prior to the guilty plea, <u>id.</u> at 16. Petitioner stated he had used medication for his back, muscle relaxants, within the last 48 hours, but it did not interfere with his ability to think in any way, <u>id.</u> at 17. Petitioner confirmed that he was clear minded and understood why he was in court, <u>id.</u> at 17-18.

Petitioner stated that the Superceding Indictment had been read to him in Spanish, that he had reviewed it with his attorney, had had enough time to discuss the charge with his attorney, and that he was satisfied with the services of his attorney, id. at 21. Petitioner also stated that no one had done anything which he considered to be wrong or unfair to get him to plead guilty to the charge, and that there had not been threats or improper coercion of any kind, id. at 22-23. Petitioner stated that he wanted to plead guilty to Count One because he was in fact guilty, id. at 23.

The Court advised petitioner and the co-defendants that Count One charged that from in or about 1991 up to and including the date of the Superceding Indictment (March 17, 2004), in the Middle District of Florida and elsewhere, they did knowingly and willfully combine, conspire, confederate and agree with each other and others to possess with intent to distribute and to distribute five kilograms or more of cocaine and one thousand kilograms or more of marijuana. (Cr. Doc. #290, pp. 23-24.) The Court advised petitioner that Count One carried a mandatory minimum term of imprisonment of ten years to life, a fine of up to $4 million, supervised release of at least five years, and a $100 special assessment, id. at 24. Petitioner stated that he understood the penalties, id.

Petitioner confirmed that he had talked with his attorney about how the Sentencing Guidelines might apply in his case, id. at 24-25. Petitioner also confirmed that his attorney explained the

various considerations which go into determining which Sentencing Guideline range may be applied, and stated that he was aware that the Sentencing Guidelines required the Court to take into account factors such as the actual conduct of petitioner, any victims of the offense, the role he played, whether or not he engaged in any obstruction of justice, whether he accepted responsibility for his acts, and his criminal history, id. at 25-26.  Petitioner further acknowledged that he understood that the Court would not be able to determine the Sentencing Guidelines range for his case until after the presentence report had been completed and he and the government had the opportunity to challenge the facts set forth by the probation officer, id. at 26.  Petitioner further stated that he understood it may be necessary for the Court to resolve disputed facts, and that how the Court resolved any disputed facts may affect the applicable Sentencing Guidelines range in his case, id. at 26-27.  Petitioner also said he understood that at that point it was unlikely his attorney could be specific as to the Sentencing Guidelines range that would apply to petitioner because the attorneys do not have all the necessary information and had not seen a presentence report, id. at 27.  Petitioner further stated that he understood he would not be allowed to withdraw his guilty plea on the ground that any prediction his attorney may have made as to the Sentencing Guidelines range or the sentence proved inaccurate, id. at 27-28.

Petitioner stated he understood that because of the statutory mandatory minimum and the Sentencing Guidelines, his sentence would be somewhere between ten years and life imprisonment, id. at 28. Petitioner further said he understood that after making the Sentencing Guidelines determination, the judge had the authority in some circumstances to impose a sentence that was more severe or less severe than called for by the Sentencing Guidelines, id. at 28-29. Supervised release and the potential denial of federal benefits were explained, and petitioner said he understood each, id. at 29-30. Petitioner's attorney agreed that the Court had explained any possible penalty applicable to petitioner, id. at 31.

Petitioner was then advised of all his rights, and stated he understood them. (Cr. Doc. #290, pp. 31-33.) Petitioner stated he understood that if he pled guilty and the Court accepted the plea, he would waive his right to trial as well as the other rights he had just discussed, including the right not to incriminate himself by answering questions from the Court during the guilty plea process. (Id. at 33-34.)

The Court read the elements of the offense, and petitioner said he understood, id. at 34-35. When asked by the Court what made him guilty, petitioner responded "Five kilograms or more of cocaine and 1000 kilos of marijuana. From 1992 to 2004", in Fort Myers, that he was involved with the other people named in Count I, as to both marijuana and cocaine, that he actually possessed cocaine and marijuana, that the five kilograms of cocaine and 1,000

kilograms of marijuana sounded accurate, and that he intended to sell it, id. at 43-44. Petitioner stated that having heard the explanation of the effect of a guilty plea he still wanted to plead guilty to Count One of the Superceding Indictment, id. at 45.

Petitioner's attorney stated that at sentencing he intended to contest certain facts that were contained in the government's Notice of Elements, Penalties and Facts. (Id. at 46.) The Court then asked petitioner whether there was anything he wanted to ask the Court or his attorney that bears on his decision to plead guilty that had not already been covered, and petitioner said "No, sir, no." (Id.) Petitioner then entered a plea of guilty, which he said was freely and voluntarily entered (Id. at 47.) The Court found that petitioner's guilty plea was knowingly, intelligently and voluntarily made and was not the result of force, threats or promises. (Id. at 47.) Petitioner's counsel agreed there were no promises made to petitioner. (Id. at 47-48.)

The record clearly establishes that petitioner's guilty plea was voluntary and not the result of ineffective assistance of counsel. "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face

of the record are wholly incredible." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977).

It is clear, and supported by the record, that petitioner talked with his attorney prior to the guilty plea about how the Sentencing Guidelines might apply to him and the various considerations which go into determining the Sentencing Guideline range. It is also clear that by the time petitioner entered his plea of guilty, he had been told by the Court, and stated he understood, that the Court was not be able to determine the Sentencing Guidelines range for his case until after the presentence report had been completed, and petitioner and the government had the opportunity to challenge the facts set forth by the probation officer; that it may be necessary for the Court to resolve disputed facts, and that how the Court resolved any disputed facts may affect the applicable Sentencing Guidelines range in his case; that at the time of the guilty plea it was unlikely his attorney could be specific as to the Sentencing Guidelines range that would apply to petitioner because the attorneys do not have all the necessary information and had not seen a Presentence Report; that he would not be allowed to withdraw his guilty plea on the ground that any prediction his attorney may have made as to the Sentencing Guidelines range or the sentence proved inaccurate; that because of the statutory mandatory minimum and the Sentencing Guidelines, his sentence would be somewhere between ten years and life imprisonment; and that the judge had the

authority in some circumstances to impose a sentence that was more severe or less severe than called for by the Sentencing Guidelines. Petitioner also heard his attorney inform the Court that there were matters which would be disputed at the sentencing hearing. Thus, the record affirmatively reflects that petitioner was given accurate advice, that he understood that his attorney's calculation was not and could not be binding, that the Court may compute the Sentencing Guidelines range differently, and if that happened, he would not be allowed to withdraw his guilty plea.

The sentencing hearing confirmed the continued disagreement between the government and petitioner regarding certain sentencing matters. At the beginning of the sentencing hearing on January 31, 2005, counsel for petitioner and three co-defendants had an extended discussion with the decision in <u>Booker v. United States</u>, decided after the guilty plea and approximately three weeks before the sentencing hearing (Cr. Doc. #344, pp. 14-29, 32-46.) Petitioner's counsel took the position that the Court could not hear testimony that the quantity of cocaine was more than the 5 to 15 kilograms admitted by petitioner in his guilty plea, and therefore petitioner's base offense level was level 32. (<u>Id.</u> at 35-38.) The Court rejected this legal argument, and indicated it would hear testimony as to the quantity of drugs to be attributed to petitioner and his co-defendants. (<u>Id.</u> at 44-46.) The Court granted counsel's request so the attorneys for the three defendants raising the issue could discuss whether to withdraw the guilty

pleas, <u>id.</u> at 46. After the recess, none of the defendants sought to withdraw his guilty plea, and the Court began taking testimony, <u>id.</u> at 46-47. At the conclusion of the testimony, defense counsel made their arguments concerning <u>Booker</u> and the evidence which had been presented at the sentencing hearing. (Cr. Doc. #350, pp. 903-939.)

The following day the Court issued its rulings as the disputed issues which were the subject of the evidentiary hearing. (Cr. Doc. #351, pp. 963-980.) After his attorney spoke, <u>id.</u> at 1004-1019, petitioner stated there was nothing he wanted to say, <u>id.</u> at 1019. The Court then imposed a sentence at the low end of the resulting Sentencing Guidelines range (262-327 months imprisonment), <u>id.</u> at 1020-1022.

The entirety of the guilty plea colloquy and sentencing hearing clearly establish that petitioner understood what he was doing, that the guilty plea was made knowingly and voluntarily, and that he received the close and effective assistance of counsel. In light of the clear record, the Court concludes that petitioner's claims of an involuntary and unknowing guilty plea and of ineffective assistance of counsel are without merit.

**(2) Failure to Raise Issues on Appeal:**

In Issue Two, petitioner asserts that appellate counsel provided ineffective assistance of counsel by failing to address meritorious claims that would have resulted in reversal. Specifically, petitioner alleges that appellate counsel should have

raised the following issues: (a) Whether petitioner's attorney provided ineffective assistance of counsel by informing him that his offense level would be 32; (b) Whether petitioner should have been given the opportunity to withdraw his guilty plea when the promises of his attorneys were not honored; (c) Whether the remedial component of Booker violated the *ex post facto* clause of the United States Constitution; (d) Whether the district court had jurisdiction over his case.

The Court has concluded that there was neither ineffective assistance of counsel nor an involuntary plea, and the record reflects that the Court granted a recess in the sentencing hearing for the attorneys to discuss a withdrawal of the guilty pleas. Additionally, the Court has concluded that it possessed jurisdiction over the case. Therefore, there was no ineffective assistance of appellate counsel in failing to raise these non-meritorious issues on appeal. As to the no *ex post facto* issue, the Eleventh Circuit has stated:

> "We review *de novo* a defendant's claim that his sentence violated *ex post facto* principles." United States v. Amedeo, 487 F.3d 823, 831 (11th Cir.), cert. denied, ___ U.S. __, 128 S. Ct. 671, 169 L. Ed. 2d 526 (2007) (quotations omitted). "[I]n Booker, the Supreme Court held that its remedial holding, making the Guidelines advisory, was to be applied to cases pending on direct review." Id. We have held there is no *ex post facto* violation in the retroactive application of Booker because "the law of this Circuit then recognized the U.S. Code as the source of the maximum sentence." Id. (quoting United States v. Duncan, 400 F.3d 1297, 1308 (11th Cir. 2005)). Thus, Pentz's argument is meritless.

United States v. Pentz, 315 Fed. Appx. 101, 102 (11th Cir.), cert. denied, 129 S. Ct. 426 (2008). Therefore, as in Pentz, no ineffective assistance of appellate counsel occurred when this issue was not raised on appeal.

**(3) Failure to Investigate Issues:**

In Issue Eleven, petitioner asserts that the issues he articulates in Issues Seven through Eleven could have been discovered with diligent investigation, and therefore counsel provided ineffective assistance in failing to properly investigate the matters. For the reasons set forth above and below, the Court finds that none of these issues are meritorious, and there was no ineffective assistance of counsel in failing to discover such non-issues.

**IV.**

Petitioner raises two sentencing issues in both the original petition and the Amendment, and re-raises his Booker argument in his Reply. For the reasons set forth below, neither are meritorious.

**(1) Scope of Booker:**

In Issue Three, petitioner argues that Cunningham v. California, 549 U.S. 270 (2007) narrowed the scope of Booker, and that his sentence violated Booker. The Court disagrees.

As noted above, on direct appeal, the Eleventh Circuit rejected petitioner's claim that the district court violated his rights under United States v. Booker, 543 U.S. 220 (2005) and

<u>Blakely v. Washington</u>, 542 U.S. 296 (2004) when it enhanced his sentence based on facts neither admitted by petitioner nor proved to a jury beyond a reasonable doubt and also rejected petitioner's claim that the sentence was unreasonable under <u>Booker</u>.    In <u>Cunningham</u> the Supreme Court applied the <u>Apprendi</u> rule to hold that facts permitting imposition of an "upper term" sentence under California's determinate sentencing law for a particular crime must be submitted to the jury.    The Eleventh Circuit has stated that <u>Cunningham</u> "reiterated" the <u>Booker</u> principle that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>United States v. Val Saint</u>, 319 Fed. Appx. 842, 845 (11th Cir. 2009)(citing <u>Booker</u>, 125 S. Ct. at 756); <u>United States v. Gonzalez</u>, 296 Fed. Appx. 799, 799-800 (11th Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 750 (2008).  The federal Sentencing Guidelines do not function as California's determinate sentencing statutes, and therefore <u>Cunningham</u> does not limit the scope of <u>Booker</u>.    Therefore, the Court finds that Issue Three is without merit.

**(2) Intervening Supreme Court Decisions:**

In Issue Four, petitioner argues that the sentence was not reasonable under two clarifying decisions by the Supreme Court.  At the time of petitioner's petition, *certiorari* had been granted in the two cases but decisions had not been issued.  Since then, <u>Rita</u>

v. United States, 551 U.S. 338 (2007) was decided, and no decision was issued in Claiborne v. United States, 549 U.S. 1016 (2006) because defendant died pending the decision. Claiborne v. United States, 551 U.S. 87 (2007).

The government argues that a § 2255 proceeding cannot be used to relitigate questions which were raised and disposed of on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000). It is true that in most cases prior disposition of an issue on direct appeal precludes further review in a subsequent § 2255 proceeding. Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994), cert. denied, 514 U.S. 1112 (1995). However, petitioner asserts an intervening U.S. Supreme Court case impacts the issue of the reasonableness of the sentence. The Court finds that the issue may be reviewed in a § 2255 proceeding in light of the intervening decisions.

In Rita the Court concluded that appellate courts could properly presume that a sentence imposed within a properly calculated Sentencing Guidelines range was reasonable. In reaching this conclusion, the Court stated that appellate courts must apply a "reasonableness" review to a district court's sentence, which "merely asks whether the trial court abused its discretion." 127 S. Ct. at 2465. The Eleventh Circuit reviewed the sentencing cases by the Supreme Court, including Rita, in United States v. Pugh, 515 F.3d 1179 (11th Cir. 2008). It is clear that nothing in Rita provided for a more favorable review of the sentence than the

review given petitioner's sentence in this case.  Indeed, <u>Rita</u> held that a sentence within a properly calculated Sentencing Guidelines range could be presumed reasonable, a presumption that the Eleventh Circuit did not apply to petitioner.  Accordingly, the Court finds that Issue Four is without merit.

Accordingly, it is now

**ORDERED:**

1.  Petitioner Jesus Garcia's Original Petition for Habeas Corpus, Request for Dismissal of Indictment and Conviction and Request for Declaratory Judgment (Cv. Doc. #1) and Supplement to Issue Three (Cv. Doc. #10) are **DENIED** as to all claims for the reasons set forth above.

2.  The Clerk of the Court shall enter judgment accordingly and close the civil file.  The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**DONE AND ORDERED** at Fort Myers, Florida, this   28th   day of August, 2009.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record
Jesus Garcia